1

```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF TEXAS
                         FORT WORTH DIVISION

UNITED STATES OF AMERICA        .   CRIMINAL ACTION NO.
                                .   4:08-CR-106-Y-1
V.                              .
                                .   Fort Worth, Texas
JAMES WILKS                     .   April 27, 2017
. . . . . . . . . . . . . . . . .



                     TRANSCRIPT OF PROCEEDINGS
                        (Revocation Hearing)
                 BEFORE THE HONORABLE TERRY R. MEANS
                     UNITED STATES DISTRICT JUDGE




APPEARANCES:

For the Government:        MR. ALEX C. LEWIS
                           United States Attorney's Office
                           801 Cherry Street, Suite 1700
                           Fort Worth, Texas  76102-6897
                           (817) 252-5200

For the Defendant:         MR. MICHAEL A. LEHMANN
                           Federal Public Defender
                           819 Taylor Street, Room 9A10
                           Fort Worth, Texas  76102
                           (817) 978-2753

Court Reporter:            MS. ANA P. WARREN
                           U.S. District Court Reporter
                           501 W. 10th Street, Room 502
                           Fort Worth, Texas  76102-3637
                           (817) 850-6681


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.
```

***P R O C E E D I N G S***

    (Commencing, 11:15 a.m.)

        THE COURT:  We have a petition for offender under supervision in Case Number 4:08-CR-106-Y, United States of America versus James Wilks.

    Are the parties ready to proceed?

        MR. LEWIS:  Alex Lewis for the government, sir. Ready to proceed.

        MR. LEHMANN:  Michael Lehmann for Mr. Wilks.  We're ready to proceed, Your Honor.

        THE COURT:  Thank you.

    Mr. Wilks, will you please acknowledge your presence in court for the record by stating your full name?

        DEFENDANT WILKS:  James Christopher Wilks.

        THE COURT:  Mr. Wilks, it is alleged in a petition for offender under supervision that you have violated certain conditions of your supervised release.  In particular, it is alleged that by using and possessing marijuana, an illegal controlled substance, in or about November of 2016 and December of 2016, and by possessing and using methamphetamine in or about March of 2017, and by failing to attend and participate in intensive out-patient substance abuse treatment sessions as scheduled on January 4, 5, and 10 of 2017, and by failing to report for a scheduled drug test on March 17, 2017, you violated Standard Condition Number 7, the additional

    1    condition prohibiting you from possessing illegal controlled

    2    substances, the additional condition requiring you to refrain

    3    from any unlawful use of a controlled substance, the

    4    additional condition requiring you to participate in a program

    5    for the treatment of narcotic or drug or alcohol dependency,

    6    and to abstain from the use of all intoxicants.

    7        Also, it's alleged that by failing to attend and

    8    participate in sex offender treatment sessions as scheduled on

    9    November 1 and 29 of 2016 and on January 5 and 17 and March 28

   10    of 2017, you violated the special condition requiring to you

   11    participate in sex offender treatment services as directed by

   12    the probation officer.

   13        Finally, it's alleged that by creating a Facebook user

   14    account under the name of Chris Wilks, you violated the

   15    special condition prohibiting you from maintaining or creating

   16    a user account and social network and site, which would

   17    include Facebook, that would allow you access to persons under

   18    the age of 18.

   19        How do you plead to each of these allegations against you,

   20    sir, true or not true?

   21            DEFENDANT WILKS:  True, Your Honor.

   22            THE COURT:  Does the government have anything to

   23    present to the Court in support of the defendant's plea of

   24    true?

   25            MR. LEWIS:  No, Your Honor.

1    THE COURT:  Does the defendant have anything to
2    present to the Court either on the question of revocation or
3    the appropriate sentence in the event of revocation?
4    MR. LEHMANN:  No evidence, Your Honor, just
5    argument.
6    THE COURT:  Go ahead, sir.
7    MR. LEHMANN:  Your Honor, we would ask the Court to
8    continue Mr. Wilks on supervised release.  Mr. Wilks has
9    pleaded true to all of the allegations, and with the exception
10   of the instance where he went in to get his gallbladder
11   removed, all of these violations correlate with a relapse.
12     As the Court is well aware, Mr. Wilks suffers from
13   Post-Traumatic Stress Disorder.  He's a combat veteran of the
14   highest order.  He served as a sniper in the army in the war
15   in Iraq.  He was the sheep dog that protected the herd, his
16   fellow soldiers.  His combat experience was extraordinary.  It
17   was also traumatic.
18     When he returned from combat, he used drugs and was less
19   than honorably discharged from the military.  The result of
20   that was that he lost his benefits with the VA.  So he was
21   left to fend for himself to deal with the PTSD and his
22   addiction.
23     The irony is that if Mr. Wilks had been killed in combat,
24   he would be celebrated as a war hero.  Instead, he returned
25   home wounded, not in a way that is visibly apparent, but in a

5

1   way that is propelling and discrete and that most people will
2   never understand.  Just like combat veterans who return with
3   some physical malady, our veterans who return home from war
4   with mental trauma also need help.
5         Just as Mr. Wilks looked out for and sacrificed for his
6   fellow soldiers, we as a society have a moral obligation to
7   look out for and to sacrifice for Mr. Wilks.  The VA
8   wrongfully turned its back on Mr. Wilks, but our criminal
9   justice system does not have to.
10        Mr. Wilks is grateful to the Court, to the Department of
11  Justice and to probation, for their help and their grace and
12  your mercy.
13        Mr. Wilks is a leader with DNA will to succeed.  This is
14  evidenced in the leadership he showed when he was at Aledo
15  High School in the drumline, and it extends all the way
16  through to his military service.  He wants to succeed, and
17  he's got many stability factors in place to help him succeed.
18  Chief among those are his parents, who are present here
19  today.
20        His father, Richard Wilks, is a former Fort Worth police
21  detective.  His mother, Laura Wilks, is Mr. Wilks's emotional
22  rock.  They have provided a place for him to live and a safe
23  refuge from the difficulties that he faces in civilian life.
24  He has a young son and a vested interest in succeeding so that
25  he, too, can help his son succeed.

1    He's been able to find employment through Amazon at a
2    warehouse up near Alliance, and there is a job still waiting
3    for him.  I believe Amazon has helped pay for some of the
4    recovery that he's currently receiving prior to today.
5        Mr. Wilks took the initiative to put himself in a
6    residential treatment and intensive out-patient treatment when
7    the relapses began.  He completed a program called The Right
8    Step, and he's looking into more treatment alternatives, one
9    of which is a sober living house.  All of this has been very
10   difficult for him because of the conviction that he received
11   on this underlying case.  There are certain prescriptions for
12   people that they will bring into these programs.
13       He knows the treatment will be ongoing throughout his
14   life.  He's identified his triggers, and he's doing his best
15   to employ the tools that he has received through all the
16   treatment programs that he's ever done.  He knows that he will
17   struggle with his addiction daily.
18       Mr. Wilks is a model prisoner.  His BOP designation is
19   Beaumont, which is one of the most violent prisons in the
20   country.  There he completed RDAP, and he worked at the
21   chapel.
22       Under supervised release, Mr. Wilks has been upfront and
23   honest about his problems.  He's been lucky to have very good
24   probation officers.
25       At the end of the day, Your Honor, I believe that our

1  society has a moral obligation to help out Mr. Wilks as much
2  as possible, and we would ask that the Court continue to do
3  that.
4       To the extent that the Court sees fit to send Mr. Wilks to
5  prison, we would simply ask for a delayed self surrender, a
6  bottom of the guideline sentence, and no more supervised
7  release.
8       Your Honor, Mr. Wilks's father would like to address the
9  Court and then Mr. Wilks himself.
10          THE COURT:  All right.
11  Good morning, sir.
12          MR. WILKS:  Good morning, Judge.
13       There is no other way to put it.  My son is a drug addict.
14  He will be for the rest of his life.
15       Drug addiction I've learned recently is a disease, an
16  incurable disease like diabetes or anything else.  There is no
17  cure, but there is treatment, and you can treat it and control
18  it if you find the right treatment.  My hope is that he finds
19  the right treatment.  I can give you no guarantees, but I have
20  high hopes that he can find the right treatment and take the
21  right steps to turn this around and do what he's suppose to
22  do.  Thank you, sir.
23          THE COURT:  Thank you.
24          MR. LEHMANN:  And, now, Mr. Wilks would like to
25  address the Court.

1        THE COURT:  All right, sir.  Go ahead.

2        DEFENDANT WILKS:  First, I have to apologize to you,
3   Your Honor, the Court, the U.S. Attorney and my probation
4   officer and my parents for putting them through this.  I've
5   been in front of you before.  And looking back on this past
6   year, I'm very embarrassed and ashamed of the choices I've
7   made, but I've been in treatment.  I just got out yesterday.
8   I spent 29 days there, and I had done a month before.  In
9   between I relapsed on methamphetamines.

10       I want you to know I'm acutely aware of the mercy and the
11  compassion that you and my probation officer have shown me.
12  The chances you've given me have been incredible.  I want you
13  to know that I honestly always am trying to be sober and clean
14  and do the right thing, but I've learned recovery has to be my
15  number one priority in life, and it likely always will be.

16       The marijuana in November, I was working -- I made work my
17  priority.  I had a girlfriend.  I wasn't going to meetings any
18  more, and when I did, I wasn't there, and it didn't last.  As
19  soon as I was presented with drugs, I have no defense.

20       Around January I relapsed to the other drug choice that
21  I've been in trouble for, and I missed those meetings.  To be
22  honest, I was out of my mind.  I don't remember January.

23       I went to The Right Step, and it's an amazing place.  I
24  really felt like I grew in there, and when I walked out of the
25  doors the first time, I felt like I was starting a new life.

1       I think Ms. Lamore was happy with me.  Everyone was happy
2  with where I was just moving forward, and a week later I
3  relapsed on methamphetamines.  It was put in front of me at an
4  NA meeting, and insanely I said, yes.  It's baffling to me.
5  In AA, they say addiction is coming back more powerful, and it
6  was proven to me that day, and I tried to get back into it,
7  and it just never really -- I couldn't get the mental -- I
8  couldn't get the gratitude back for what I had.  I was just
9  too ashamed, and I just couldn't get back on the horse.
10      So I struggled and I ended up failing UAs, of course.  I
11  suppose I got lucky.  I had a gall bladder incident, and I
12  stopped using.  So I'm at 39 days sober today.  I went back
13  into the ER and I was just in pain.  I had surgery and I went
14  back to The Right Step.  I spent the last 29 days just
15  committed to finding out why I relapse, what I can do to stop
16  it.  I know what I'm facing here today and I'm willing to
17  accept it.  Whatever happens, it's just going to be part of
18  God's plan.  It's part of the 12 steps.  I have to accept
19  anything.
20      But I committed to a plan, and The Right Step part is
21  getting out.  I had to plan as if I was going free.  I finally
22  found a sober living house.  Everything I planned I have to
23  get approved by my probation officer, but I signed up.  It was
24  approved for the sobriety house, which is a step down from
25  residential where I was.  I signed up for IOP at a different

1   location, closer to the sober house -- where I was,
2   actually.
3       I have a sponsor. I found a group near in Grapevine,
4   which is a group that I couldn't make it to from where I lived
5   with my parents. The sober house, it's an amazing group. I
6   found an amazing sponsor. I feel like I can move forward, and
7   if I have to go away for awhile, I'll just put the plan on
8   hold because I have too many things to live for.
9       Thanks for listening to me, and that's all I have to
10  say.
11              THE COURT: Thank you, sir.
12      Does the government wish to be heard?
13              MR. LEWIS: Judge, briefly, if that's all right.
14              THE COURT: That's what the time is for. I'm not
15  going anywhere.
16              MR. LEWIS: Well, Judge, cases like this, to be
17  honest with you, just make me feel old.
18              THE COURT: You are looking a little older.
19              MR. LEWIS: I feel older, and it's cases like this
20  that kind of do it to me. I've been on the case from the very
21  beginning, since the first part of the investigation back in
22  2008. And I told Mr. Lehmann this, and I don't think he or
23  Mr. Wilks have any disagreement when I say this to the Court.
24  The Court gave Mr. Wilks a very large break from the beginning
25  in 2009. I think he was looking at over 200 months if I

1  remember correctly.
2       You gave him a 60 month sentence, which is, you know, a
3  show of faith on your part that you believed in Mr. Wilks.
4  The Court knows that the government was shooting for a higher
5  sentence that day.  So we were left with him given a chance.
6  Once he served his five years, then he was given more chances
7  and more opportunities.  Choices have to be made at some
8  point, Judge, and he simply -- I hate to say this, but it
9  seems to the government that he's not able to make those right
10 choices in a consistent manner and able to ensure the safety
11 of the community and his own safety.
12      Mr. Wilks is a very well spoken individual, and at times
13 I've given him an A+ on his behavior, but it's those times
14 when he falters that it really frightens the government in
15 that the safety of the community and his own safety is at
16 risk.
17      I feel bad for his parents.  God bless his parents for
18 being there for him this entire time.  I remember seeing both
19 of them in 2009, and they have been there for him, and he's
20 going to continue to need them, and God bless them for being
21 here, but at some point in time, the defendant has to say --
22 and I know it's very difficult.  I'm not saying it's not, but
23 at some point those choices have to fall upon his shoulders,
24 and he has to make the right decisions on a consistent basis.
25      I don't think we're there yet with the defendant, and I

1  get no joy in doing this.  There's no joy or happiness that
2  fills me by saying I think he needs to go to jail.  There's
3  not, but I think that I do need to represent the government in
4  saying that I feel that jail time is warranted, and I know
5  it's going to be a short sentence because it's, at most, I
6  think, two years the Court can give him, and I know that his
7  problems won't be solved after two years, but at least I'll
8  rest knowing that after at least that short amount of time,
9  the public will be safe from many of his choices that aren't
10 the right ones.  I know that he's going to continue to battle
11 these things on down the road, but maybe he will get the help
12 that he needs in a more consistent, more daily in your face
13 kind of basis while being incarcerated.
14      That's my only suggestion to the Court.  Thank you.
15          THE COURT:  Thank you, sir.
16      I'll announce my decision.  The attorneys will have a
17 final chance to make legal objections before it's made
18 final.
19      I adopt the statements contained in the supervised release
20 violation report, and I have additionally considered the
21 evidence and the arguments presented in the petition for
22 offender under supervision and the information and evidence
23 adduced here today.
24      I find that James Wilks has violated the following
25 conditions of supervision:

1	Standard Condition Number 7, the additional condition
2	regarding possessing illegal controlled substances.  The
3	additional condition requiring him to refrain from any
4	unlawful use of a controlled substance.  The additional
5	condition requiring him to participate in a program for the
6	treatment of narcotic or drug or alcohol dependency that will
7	include testing, and the special condition requiring him to
8	participate in sex offender treatment services as directed by
9	the probation officer.  And the special condition prohibiting
10	him from maintaining or creating a user account on any social
11	networking site that allows access to persons under the age of
12	18.
13	The United States Sentencing Commission policy statements
14	contained in Chapter 7 of the guidelines manual regarding
15	supervised release violations have been duly considered.
16	It is the judgment of the Court that James Wilks, in Case
17	Number 4:08-CR-106-Y, be committed to the custody of the
18	Federal Bureau of Prisons for a term of 18 months pursuant to
19	Section -- United States Sentencing Guidelines Section 7B1.4A.
20	Upon release from imprisonment, Mr. Wilks shall be on
21	supervised release for a term of 60 months pursuant to this
22	order and under the same conditions as previously set out in
23	the judgment and commitment order in Case Number 4:08-CR-106-Y
24	and any amendments of that order that have ensued.
25	It is the Court's finding that Mr. Wilks violated his

14

1  conditions of supervised release as enumerated just previously
2  and an 18th month sentence of incarceration will serve to
3  address the violation conduct committed by Mr. Wilks and as a
4  deterrent from further criminal activity.
5      Now, my comments.
6      Mr. Wilks, you have exhausted my patience, and I have to
7  say, I don't care what it is you've done or life you've lived,
8  there are a lot of people that have had a worse life than you
9  have, and you have to accept the authority of the United
10 States Government over you.  You haven't been.  You've given
11 the middle finger to your government that you served at one
12 time because you said, I can do this.  I don't care what you
13 say.  I can go ahead and do as I please, and you come in here
14 and ask for mercy and gotten it on multiple occasions, and I
15 see no reason to give you any more mercy, and I will assure
16 you, if I'm still on this bench and you come back before me,
17 I'll give you another 18 month sentence.
18     So this is up to you.  You've got to stop acting like a
19 child.  I don't care what your excuses are or how much trauma
20 you've had.  It's still your responsibility to change your
21 behavior and stop violating the laws.  And you're not just
22 violating the laws a little bit.  These are serious
23 violations.
24     You were initially found guilty of a crime that could have
25 sent you to prison and you would still be there facing ten

1  more years.  I showed you a lot of mercy that day, and you've
2  basically thrown it back at me.  I'm out of sympathy for
3  you -- well, I won't say that.  Of course, I have sympathy,
4  but I'm out of mercy.
5       I have now stated the sentence and the reasons therefore.
6  I call upon the parties to indicate any legal reason why
7  sentence may not be imposed as stated.
8            MR. LEWIS:  Not from the government, sir.
9            MR. LEHMANN:  Your Honor, we would object to the
10 sentence as being substantively and procedurally
11 unreasonable.
12           THE COURT:  Overruled.  The sentence is imposed as
13 stated.
14      I do recommend -- what were the recommendations you
15 wanted?
16           MR. LEHMANN:  Your Honor, I had asked for voluntary
17 self-surrender.
18           THE COURT:  Denied.
19           MR. LEHMANN:  Housing in the Northern District of
20 Texas.
21           THE COURT:  Granted.
22           MR. LEHMANN:  And that's all.
23           THE COURT:  That's it.  Okay.
24      The objection is overruled.
25      Mr. Wilks, you have the right to appeal the sentence that

1  I have imposed.  You also have the right to apply for leave to
2  appeal in forma pauperis if you're unable to pay the cost of
3  an appeal.
4      You have been provided a notice of that.  If you can sign
5  that, please, and return it to us.  That's the Court's notice
6  to you that you have the right to appeal -- well, you have
7  signed it.  Here it is -- not your notice to the Court that
8  you are, in fact, appealing, and if you do decide to appeal,
9  you must do so within 14 days in writing signed and filed with
10 the Court, and Mr. Lehmann will assist you in that if you ask
11 him to.
12     You are remanded to the custody of the United States
13 Marshal.
14     (End of proceedings, 11:30 a.m.)
15
16                              -oOo-
17
18
19
20                           CERTIFICATE
21     I certify that the foregoing is a correct transcript from
   the record of proceedings in the above-entitled matter, and
22 that the transcript was prepared by me and under my
   supervision.
23
24 s/  Ana P. Warren                        July 10, 2017
   Ana P. Warren, CSR #2302                    Date
25 U.S. District Court Reporter