```
                                                                      1

 1                  IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF TEXAS
 2                          FORT WORTH DIVISION

 3   UNITED STATES OF AMERICA         .   CRIMINAL ACTION NO.
                                      .   4:08-CR-106-Y-1
 4   V.                               .
                                      .   Fort Worth, Texas
 5   JAMES CHRISTOPHER WILKS          .   March 9, 2009
     . . . . . . . . . . . . . . . . . .
 6


 7
                         TRANSCRIPT OF PROCEEDINGS
 8                         (Sentencing Hearing)
                    BEFORE THE HONORABLE TERRY R. MEANS
 9                     UNITED STATES DISTRICT JUDGE


10

11   APPEARANCES:

12   For the Government:          MR. ALEX C. LEWIS
                                  United States Attorney's Office
13                                801 Cherry Street, Suite 1700
                                  Fort Worth, Texas  76102-6897
14                                (817) 252-5200

15   For the Defendant:           MR. JIM W. LANE
                                  Attorney at Law
16                                204 W. Central Avenue
                                  Fort Worth, Texas  76164
17                                (817) 625-5582

18                                MS. MARLO P. CADEDDU
                                  Attorney at Law
19                                3232 McKinney Avenue, Suite 700
                                  Dallas, Texas  75204
20                                (214) 220-9000

21   Court Reporter:              MS. ANA P. WARREN
                                  U.S. District Court Reporter
22                                501 W. 10th Street, Room 502
                                  Fort Worth, Texas  76102-3637
23                                (817) 850-6681

24
     Proceedings recorded by mechanical stenography; transcript
25   produced by computer-aided transcription.
```

***P R O C E E D I N G S***

1
2          (Commencing, 9:00 a.m.)
3              THE COURT:  Next before the Court is the sentencing
4   of James Wilks.  This is Cause Number 4:08-CR-106-Y, United
5   States of America versus James Chris Wilks.  I believe Chris
6   is his preferred name.
7       Are the parties ready to proceed?
8              MR. LEWIS:  The government's ready, sir.
9              MR. LANE:  Defense is ready, Your Honor.
10             THE COURT:  Mr. Wilks, will you please step to the
11  lectern along with your counsel and acknowledge your presence
12  in court for the record by stating your full name?
13             DEFENDANT WILKS:  James Christopher Wilks.
14             THE COURT:  Mr. Wilks, you appeared before Magistrate
15  Judge Charles Bleil on October 29, 2008, at which time you
16  entered a plea of guilty to Count 1 of the indictment charging
17  you with receipt of child pornography, in violation of 18,
18  United States Code, Section 2252(a)(2).
19      On that date, Judge Bleil found that your plea of guilty
20  was a knowing and voluntary plea supported by an independent
21  basis in fact containing each of the essential elements of the
22  offense.  You told him at that time that you understood the
23  elements of the offense, agreed to the accuracy of the factual
24  resume, and admitted that you committed all essential elements
25  of the offense.  On November 12, 2008, I entered an order

1  accepting your plea and adjudging you guilty of the crime
2  alleged in the indictment against you.
3      Mr. Lane, did you and your client receive in a timely
4  manner a copy of the presentence report and the addendum to
5  the report?
6          MR. LANE:  We did, Your Honor.
7          THE COURT:  And did you have an opportunity to review
8  those carefully with Mr. Wilks?
9          MR. LANE:  We have.
10         THE COURT:  Did the government receive those timely?
11         MR. LEWIS:  Yes, Your Honor.
12         THE COURT:  Then I will now notify the parties of my
13 tentative findings as to the defendant's objections to the
14 presentence report and the disposition of the defendant's
15 motions for downward departure or sentencing variance.
16     The defendant's sole objection is moot.  I do not intend
17 to depart upward and could not legally do so if I did.  The
18 defendant's motion for downward departure and for sentencing
19 variance are both granted.  Whether couched in terms of a
20 departure under the guidelines regime or as a sentencing
21 variance under 18, United States Code, Section 3553(a), the
22 result would be the same.  The defendant's motion does not
23 contain a single, frivolous, incorrect, irrational, misplaced,
24 or unpersuasive point or argument, either of law or fact, and
25 it is, therefore, adopted in its entirety as the basis for a

1   departure and sentencing variance and will be incorporated
2   physically as well as by reference in the judgment and the
3   statement of reasons.
4       Does the government have any objection and/or evidence
5   relating to my tentative findings?
6           MR. LEWIS:  No, sir.
7           THE COURT:  Does the defendant?
8           MS. CADEDDU:  I don't believe so, Your Honor, in
9   light of the Court's tentative rulings.
10          THE COURT:  Then I adopt as my final findings of fact
11  the statements of fact made in the presentence report subject
12  to and including changes and qualifications made by the
13  addendum.
14      After having considered the conclusions expressed by the
15  probation officer in the presentence report as to the
16  appropriate guideline calculations, I determine that the
17  appropriate calculations are:
18      Total Offense Level 37.  Criminal History Category I.
19  Imprisonment range 210 to 240 months.  Supervised release
20  range five years to life, and a fine range of $20,000 to
21  $200,000, plus, the costs of imprisonment and supervision.
22      I have received a number of letters on behalf of
23  Mr. Wilks.  I've read them all, and they do play a role in my
24  thinking as to the appropriate sentence in this case.
25          Mr. Lane or Ms. Cadeddu, do either of you wish to make any

1  remarks on behalf of Mr. Wilks before I pronounce the
2  sentence?
3        MS. CADEDDU:  Your Honor, I believe that Mr. Lane
4  does.  Since the Court has adopted the departure motion, I
5  will defer to Mr. Lane.
6        THE COURT:  All right.
7        MR. LANE:  Well, I've written down many things I
8  wanted to say to you, but I've torn them up and rewritten
9  them.
10     I want to say to you that over 40 years ago next month, I
11 put on a uniform and began a unique experience by defending
12 combat soldiers, and after four years of doing that in court
13 marshals, I ended up doing a lot of it since then.
14     What I wanted you to know is probably something you
15 already know, but I'm seeing a repeat of something that
16 happened some 40 years ago, and that is how we're treating
17 combat soldiers, and it's very difficult for me because I'm
18 angry about it, not at this Court and not so much at this
19 government.  I'm angry because of what we've had to do and the
20 way in which we've had to try to take these soldiers and put
21 them back together.
22     The only way it can really be done is through the VA, but
23 as we did in Vietnam, after Vietnam, we boarded people out.
24 We gave them other than honorable condition discharges.
25 Really what that does, Judge -- and you probably know this --

1    is cut off all VA benefits.
2        You know, for a country that can bail out a bank, maybe we
3    ought to think about bailing out --
4            THE COURT: Is that reversible, other than --
5            MR. LANE: It probably won't be in this case.
6        Actually, I've visited with Pete Geren about this. We're
7    lucky in Fort Worth to have the Secretary of the Army here.
8    It's not lost. I'm going to try to do that, but it's a
9    difficult thing to do, especially with what we're facing here
10   today.
11       But, Judge, you know, this family, once this occurred --
12   and I'm certainly no expert -- but after 30 minutes with
13   Chris, I told this family you need to get him to someone who
14   can deal with Post Traumatic Stress Disorder. It doesn't take
15   a genius to figure it out, and we found Dr. Foster, or his
16   parents did, and she's in the courtroom today. She's done
17   wonderful things with Chris, and Mr. Ferret (phonetic) has
18   done so much of this also and I got him to look at Chris.
19       I guess what I'm saying to you is, if anybody, if anybody,
20   in the criminal justice system deserved for you to use your
21   authority to minimize his length in prison, it's a combat
22   soldier. We're not asking you to excuse his conduct, and he
23   accepts full responsibility for what he did, but this is such
24   a unique and unknown area to a certain extent, and I really
25   would like for you to take that into consideration.

1   We're seeing it again, and I'm seeing it again, and I'm
2   handling more and more cases for Iraqi and soon to be probably
3   Afghanistan veterans.  This country is going to have to deal
4   with this, or we will have the criminal justice system, once
5   again, overloaded with veterans with no benefits.
6           THE COURT:  Thank you.
7       Mr. Wilks, do you wish to speak on your own behalf or
8   present any information in mitigation of your sentence?
9           MR. LANE:  Judge, we have -- if you will permit us,
10  Chris's father would like to address the court for the
11  family.
12          THE COURT:  All right.
13      Good morning, sir.
14          MR. WILKS:  Good morning.
15          THE COURT:  Go ahead.
16      Judge, my name is Richard Wilks.  I'm Chris's father --
17          THE COURT:  And I read your letter.
18          MR. WILKS:  I'm a Fort Worth police detective for 32
19  years, retired in 1999 from the Fort Worth Police Department.
20      You're going to have to bear with me.  This is kind of
21  hard for me.
22          THE COURT:  That's all right.  I understand.
23          MR. WILKS:  My wife, Laura, and I raised Chris and
24  his brother the best we could with love, understanding and
25  sometimes a little discipline.  I thought we did the best job

1    we could.  Chris was a good kid --
2             THE COURT:  Well, all parents do think they are doing
3    the best job they can.
4             MR. WILKS:  Well, he was a good kid.  Chris was a
5    good kid.  He made good grades in school.  He was never in any
6    trouble either at school or with the law.  When the events of
7    9/11 occurred, like most of us, he was in shock, angry, and
8    amazed that someone could do this to our country.  Unlike most
9    of us, he felt it was his duty to join the military.
10       He and his wife, Andrea, were married in August 2002, and
11   shortly thereafter, in November he enlisted in the army.
12   After basic training, he was stationed in Fort Hood.  He was a
13   model soldier, promoted twice in a year, and seemed to love
14   the army life.
15       In March 2005, he was deployed to Iraq and served a year
16   over there.  While he was there, his son, my grandson, Walker,
17   was born.  Shortly, before he was due to return, he was
18   promoted again to sergeant.  He returned in March of 2005.
19   Things went pretty good for awhile, and then things changed.
20       You'll have to forgive me because I have a lot of anger.
21   It's not directed at you.  I have the deepest respect for this
22   Court.  But he tested positive for marijuana in a drug test,
23   and the army decided that he needed punishment with extra duty
24   for a period of time, reduced him, not once, but twice in
25   rank, moved him away from his wife and son and put him in a

1   barracks.
2       A short time later, they found two ounces of marijuana --
3   or two grams of marijuana, I believe it was, in the room he
4   was staying at in the barracks, and, basically, they -- I
5   think the word is boarded him out of the army, basically, just
6   asked him to leave, receiving no benefits.
7       After that, he moved to Fort Worth and started working for
8   his father-in-law, Leo Wise, as an apprentice electrician.  In
9   fact, he's still employed by Mr. Wise to this date.  I believe
10  he will tell you that he's a good employee.  When he was
11  suppose to be at work, he was there.
12      We've come to find out that the problems he's had were
13  probably PTSD.  Of course, we didn't know at the time because
14  he didn't tell us, and I'm not smart enough to know.
15      The government agents executed a search warrant and in
16  April 2007, seized computers and suspected him of being in
17  possession of child pornography.  A couple months later in
18  June, they contacted him and said the computers were back, and
19  he could set it for a hearing if he wanted the computers
20  returned.  A little over a year later in August 2000 -- or
21  late July 2008, he was arrested and charged with possession of
22  child pornography.
23      Judge Bleil was kind enough to release him into my custody
24  where he was able to get -- we were able to get treatment for
25  him for his problems.  He has been receiving treatment since

1    that time, usually, twice weekly.  He is tested twice monthly
2    by the United States Probation Office for drug use and has not
3    failed one test.
4        I don't know if anyone can imagine what these kids go
5    through in Iraq unless you've been there.  I don't know how we
6    could, but I know that it has changed him forever.  He's still
7    a great father, a good husband, and a wonderful son, and I'm
8    asking -- no, I'm begging you, if there is any way you can
9    have mercy on my son because he deserves it for what he went
10   through in service to his country.
11       I guess that's all.  Thank you.
12              THE COURT:  Thank you, sir.
13              MR. LANE:  Judge, Chris wants to address the Court.
14              THE COURT:  Go ahead, sir.
15              DEFENDANT WILKS:  I just have a few things to say --
16              THE COURT:  Okay.  Most people, when they read
17   something, go too fast.  So just go slow enough I can
18   understand you.
19              DEFENDANT WILKS:  Yes, Your Honor.  I just had to
20   make some notes so I could --
21              THE COURT:  That's fine.
22              DEFENDANT WILKS:  First of all, I would like to
23   apologize to the Court and for the time and effort that has
24   had to go into this case.  I want to apologize to my family,
25   my mom and dad.  I have put them through a lot of

1  disappointment and pain, and I'm sorry.
2      I want to apologize to my wife and father-in-law.  They
3  have supported me throughout this ordeal, and I'm just sorry
4  that I've hurt them.
5      I want to apologize to my son.  I know that I will be
6  going to prison and I'm not going to be there for him, and I'm
7  sorry for that.
8      I want to apologize to the victims of child pornography.
9  They were victimized when the pictures were taken and every
10 time they were downloaded, and I participated in that
11 victimization.  I hurt those children as well, and there is
12 nothing I can do except take responsibility for it, and I'm
13 sorry that it happened.
14     I also want to thank the Court, too, for allowing me this
15 time.  I know that it's outside of the norm for me to be out
16 of jail right now.  It's helped me a lot.  I've gotten a lot
17 of counseling, getting a lot of help, and it has changed my
18 life for the better.  And that's all I have to say, Your
19 Honor.
20           THE COURT:  Thank you.
21     Does the government wish to be heard?
22           MR. LEWIS:  Just briefly, Judge.
23     If you want me to make my statement from here, I can?
24           THE COURT:  Yes.
25           MR. LEWIS:  Okay.  Judge, there are a lot of real

1  issues involved with the defendant and the government's case,
2  a lot of real issues, and some of those issues involving the
3  defendant were received during military service.  While those
4  are real issues -- and they do need to be addressed without
5  question -- some of those issues, also, came about prior to
6  military service.  I'm sure you're aware of that reading the
7  PSR, and I'm not going to go into all those different issues,
8  but there's a lot of issues in this case.
9      And I know that the Court made mention of the fact that
10 its read the letters in support of Mr. Wilks, and the
11 government always applauds support given to --
12         THE COURT:  And I've read the victim letters as well.
13         MR. LEWIS:  And that's where I was going.
14     May I point out, also, in this case there are victims
15 letters, letters from known victims that have been affected
16 and forever will be affected in this case and by many other
17 cases like it.  I just want to make sure that the Court was
18 aware of that as well.
19     I guess -- I know that the Court has already adopted the
20 defendant's motions and made it a part of the record.  The
21 government doesn't have any objection to that.  The defendant
22 does bring up reasonable issues that do need to be addressed
23 and the Court should take a look at it, and the government
24 doesn't have a problem with that.  However, the government
25 feels that -- if the argument were this:

1    I have a lot of issues going on in my life, and during a
2    brief section, brief time, I received and looked at images of
3    child pornography, that would be one thing.  Now, the
4    government's not saying that's okay.  That would be one set of
5    facts.  However, this is a different set of facts, Judge.
6         The defendant traded child pornography for over a
7    year-and-a-half during different points in time and used
8    children like currency in this.  For that, that's somehow
9    different -- I apologize.  I keep hitting that.
10        That's different.  That is using children, not just -- I
11   know the medical reports say as an escape for pain, but when
12   you start using children for currency, ages ranging from,
13   what, five, six months of age up through their teenage years,
14   for their benefit, I'm not sure we get to the point where we
15   say, well, he did this because he had all these issues and
16   that's the only reason why.  I think that's too big of a
17   stretch.  I think that's too big of a bridge to build from
18   having, obviously, mental issues, to all the way to trading
19   child pornography for over a year-and-a-half knowing all that
20   time that it's wrong.
21        It would be one thing to say, I had no idea what I was
22   doing when I was trading these things.  Through the chat logs
23   and the dialogue between the defendant and others who were
24   trading child pornography with them, he knew exactly what he
25   was doing, what he was looking for, what he was hunting for.

1    So the government would request that that be taken into
2    account as well.  It's not as if it's just a one time limited
3    point in his life.  It's a year-and-a-half over many different
4    conversations with other people.  That's the reason why the
5    government feels the guideline range is appropriate in this
6    case.  Thank you, Judge.
7            THE COURT:  Thank you, sir.
8    I will now state the sentence, determined pursuant to
9    Title 18, United States Code, Section 3553(a), treating the
10   sentencing guidelines issued by the sentencing commission as
11   advisory only under U.S. v. Booker.
12   In arriving at a reasonable sentence, I have taken into
13   account primarily the conduct admitted by Mr. Wilks in his
14   factual resume and those matters required to be considered by
15   Section 3553(a).
16   The attorneys will have a final chance to make legal
17   objections before sentence is finally imposed.
18   It is the judgment of the court that the defendant, James
19   Wilks, in Cause Number 4:08-CR-106-Y, is hereby committed to
20   the custody of the Federal Bureau of Prisons for a period of
21   60 months.  I do not order a fine or costs of incarceration
22   because Mr. Wilks does not have the financial resources or
23   future earning capacity to pay a fine or costs of
24   incarceration.
25           Upon release from imprisonment, Mr. Wilks shall be on

15

1 supervised release for a term of ten years.  While on
2 supervised release, he shall comply with the standard
3 conditions recommended by the sentencing commission and comply
4 with certain additional conditions that have been set out in a
5 separate order signed by me this day and offered to Mr. Wilks
6 for his review and signature.  He has now returned that to me
7 with his signature indicating his receipt of those additional
8 terms, his understanding of them, and his waiver of having
9 them read here in open court.  In addition, he is ordered to
10 pay a mandatory special assessment of $100.
11         In determining the sentence, the Court has considered the
12 advisory guidelines as well as statutory directives listed in
13 18, U.S.C., Section 3553(a).  A sentence of 60 months, which
14 is at the bottom of the statutory range, is sufficient but not
15 greater than necessary to achieve the Court's sentencing
16 objectives of punishment, deterrence, and protection of the
17 public.
18         As stated previously, I adopt in toto the defendant's
19 motion for a downward departure or for a below guideline
20 sentence and the reasoning and arguments therein set out as
21 the basis for this large downward departure.
22         I've now stated the sentence.  I call upon the parties to
23 indicate any legal reason why sentence may not be imposed as
24 stated?
25                 MR. LEWIS:  None from the government, sir.

16

1        MS. CADEDDU:  None, Your Honor.

2        THE COURT:  Sentence is then imposed as stated.

3    Let me say this to you, Mr. Wilks, and, actually, to both

4    sides.

5    I'm glad that the Supreme Court has decided that the

6    Courts have the latitude to give sentences that meet the

7    facts.  Your case might not have qualified for a straight

8    downward departure.  It might have, but, certainly, an appeal

9    would have a much better chance of being successful if the

10   government chose to appeal than it's likely to here.

11   Yours is a different situation.  Now, Mr. Lewis is correct

12   when he points out that this covered a longer period of time,

13   that there are some troubling aspects about your behavior, and

14   that it's arguable that a within guideline sentence would be

15   reasonable, and within guidelines means at least -- it was 210

16   to 240 months, a long time.

17   But it seems to me that most of those years would just be

18   punitive, have no purpose other than just to punish, and

19   you're going to be punished quite sufficiently in my mind.

20   You have got a record, ten years of supervised release, during

21   which any indication that you have returned to this kind of

22   behavior would likely place you in prison again.  I mean,

23   harder to find a job.  Harder to be treated the same as

24   anybody else, and you have got 60 months to serve in addition.

25   Thank God you're going to the federal system and not a state

1  system where I think you will be treated fairly well even by
2  the inmates.  They seem to have this pecking order of what
3  people do and how they should be treated.
4      So this is a difficult decision and a difficult sentence
5  to give, to try to take into account all those, but I will say
6  this, your counsel here brought to the Court's attention just
7  about everything that could be brought to attention on your
8  behalf, and after I read the sentencing memorandum, there was
9  just very little I could disagree with.  So in some respect,
10 you have been fortunate in your choice of counsel and in their
11 ability to be persuasive.
12     To bring this to a conclusion, nobody wants you to succeed
13 more than I do except for your loved ones, and we want you to
14 do well.  We want you to put your life back together, and I
15 definitely don't want to see you back here ever again in this
16 capacity.
17     I will say this.  Should you ever fall back into making
18 child pornography available to yourself, you will have put the
19 lie to what you have told me, and you will have made the faith
20 that I've given here with this huge departure a mistake.
21     So I know you already are resolved to get away from this.
22 I'm just asking you man to man try as be hard as you can to
23 put it behind you and to move on.  You've got a wife and a
24 little boy, and I hope it will get you back home in time to be
25 the father that I think you want to be and be the person that

1  I think you want to be.  So good luck to you.
2             DEFENDANT WILKS:  Thank you, Your Honor.
3             MS. CADEDDU:  Your Honor -- I apologize.
4             THE COURT:  I have a few more things to say but go
5  ahead.
6             MS. CADEDDU:  I was just going to -- I'm not sure if
7  the Court -- I don't recall if the Court includes
8  recommendation for placement?
9             THE COURT:  I usually don't.  What is your request?
10            MS. CADEDDU:  We would request North Texas so that he
11 can maintain contact with his son.
12            THE COURT:  Okay.  I'll go ahead and put that in.
13     You have the right to appeal the sentence that I have
14 imposed.  You also have the right to apply for leave to appeal
15 in forma pauperis if you're unable to pay the cost of an
16 appeal.
17     I order you to surrender for service of your sentence at
18 the institution designated by the Bureau of Prisons before
19 2:00 p.m. on Monday, April 13, 2009 as notified by the United
20 States Marshal or as notified by the pretrial office.  Please
21 remember, sir, that failure to report for service of a
22 sentence is a criminal offense under 18, United States Code,
23 Section 3146(a)(2).
24     Mr. Lewis, is there any reasons why the present conditions
25 of release may not continue to apply?

1    MR. LEWIS:  There are no new conditions that the
2    government is aware of, sir, no.
3    THE COURT:  All right.  The present conditions will
4    continue to apply until you report on April 13, 2009.
5    Do you have any questions, sir?
6    DEFENDANT WILKS:  No, Your Honor.
7    THE COURT:  All right.  Thank you.  Good luck to you.
8    MR. LANE:  Thank you, Judge.
9    MS. CADEDDU:  May we be excused?
10   THE COURT:  Yes.
11   Ms. Cadeddu, can I speak with you briefly?
12   MS. CADEDDU:  Yes, Your Honor.
13   (End of proceedings, 10:30 a.m.)

-oOo-

CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter, and that the transcript was prepared by me and under my supervision.

s/  Ana P. Warren                          October 20, 2017
Ana P. Warren, CSR #2302                        Date
U.S. District Court Reporter